

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRENDA HARRISON
6803 Emlen Street
Philadelphia, PA 19119

       Plaintiff,

       v.

PELHAM COURT LP
2021 Arch Street,
Philadelphia, PA 19103

       and

RUSHMORE MANAGEMENT
111 S. Harrison Street
East Orange, NJ 07018

       Defendants.

18    3484

**CIVIL ACTION NUMBER:**

**COMPLAINT**

**JURY TRIAL DEMANDED**

## CIVIL COMPLAINT
### INTRODUCTION

1.     For the last fourteen years, Brenda Harrison, a disabled, low-income Philadelphia resident, has been confined to her fourth-floor apartment for weeks at a time when the elevators in her building break down or are taken offline by her landlord.

2.     Ms. Harrison's only recourse during these outages has been modest: pursuant to Pennsylvania law she withholds a small portion of her rent, all while pleading to have the elevators repaired, and reminding her landlord of the disability that makes it impossible for her to leave her apartment when the elevators are not operational.

3.     In response to her pleas, and with a months-long elevator outage planned, her landlord attempted to end the controversy once and for all, by imposing discriminatory terms upon her, and then terminating her lease in retaliation when she refused to accept them.

4.      Ms. Harrison now brings suit against Defendants under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, seeking actual damages, punitive damages, injunctive relief, and attorney's fees and costs.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over the subject matter in this action pursuant to 28 U.S.C. § 1331.

6.      Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events, acts, or omissions giving rise to the claims occurred within the Eastern District of Pennsylvania and Defendants conduct business in this district.

## PARTIES

7.      Plaintiff Brenda Harrison is a Philadelphia resident with multiple disabilities who currently resides in the Pelham Court Apartments at 6803 Emlen Street, Philadelphia, PA 19119.

8.      Defendant Pelham Court LP is the owner of record for the Pelham Court Apartments and is a Pennsylvania limited partnership (Entity No. 3749265) whose registered address is c/o M. Burr Keim Company, 2021 Arch Street, Philadelphia, PA 19103.

9.      Defendant Rushmore Management is the property manager for Pelham Court Apartments and is a New Jersey limited liability corporation located at 111 S. Harrison Street, East Orange, NJ 07018.

## FACTS

10.      Ms. Harrison is a 62-year old woman with multiple disabilities.

11.      Ms. Harrison has fibromyalgia, vascular disease, and arthritis, which prevent her from climbing stairs, and cause other serious mobility deficiencies that require assistance from home health aides, canes, and a walker.

12.     Each of Ms. Harrison's medical conditions, alone or combined, are disabilities as defined by the Fair Housing Act.

13.     Ms. Harrison is low-income, declared to be disabled by the Social Security Administration and, as a result, receives Social Security Disability Insurance benefits.

14.     Ms. Harrison lives alone but has two home health aides that bring her groceries, take her to appointments, and help with chores around the house.

15.     Pelham Court Apartments ("Pelham Court") is a large apartment building with approximately 90 units located in the Mt. Airy neighborhood of Philadelphia.

16.     Pelham Court is separated into three wings, each with its own elevator – but residents in one wing cannot access the elevators in a different wing because there are no pathways or corridors between the wings on the second, third, and fourth floors of the building.

17.     Ms. Harrison moved into Pelham Court in 2004, and she chose the building in part because of its accessible elevators near her fourth-floor apartment.

**The elevators constantly break, disrupting all aspects of Ms. Harrison's life**

18.     Over the past fourteen years, the elevators in Ms. Harrison's wing of the building have broken numerous times.

19.     In previous years of living at Pelham Court, Ms. Harrison would, with the help of friends and neighbors, climb over a three-foot partition between her balcony and her neighbor's balcony to use the elevators in a different wing of the building.

20.     However, as her health further deteriorated, she could no longer access any elevators when the single elevator in her wing of the building was down.

21.     Instead, Ms. Harrison would be trapped in her apartment until the elevators were fixed.

22.    Ms. Harrison therefore responded to these numerous elevator outages by sending letters to Pelham Court's property managers, reminding them of her disability while also informing them that she would withhold a portion of her rent due to the elevator not working.

23.    For example, in 2013 Ms. Harrison emailed Isaac Scheinerman, who upon information and belief was an agent for Pelham Court, about the elevator being inoperable during February and March of that year.

24.    Ms. Harrison implored Mr. Scheinerman to fix the elevators, stating that the inoperable elevators had been "a tremendous hardship for me due to my handicap and inability to climb the stairs."

25.    Ms. Harrison told Mr. Scheinerman that the elevator outage prevented her from visiting her father in hospice, causing her to be unable to see him before he ultimately passed away.

26.    Each time the elevator stopped working, Ms. Harrison deducted one third of her normal monthly rent as a result of being trapped in her home due to her disability.

27.    The same situation repeated itself numerous times, including in March, June, and July of 2017, when the elevators were out at different points for several days.

28.    In 2017, Ms. Harrison filed a complaint against Pelham Court with the Philadelphia Fair Housing Commission after it threatened to evict her for withholding rent while the elevators were out of service. *See* Order at Ex. A.

29.    The Fair Housing Commission found that this eviction threat violated the Philadelphia Fair Housing Ordinance, and that Ms. Harrison was entitled to keep and withhold rent for the period between March 10, 2017 and March 29, 2017 as a matter of law. *Id.*

30.     In July of 2017, Ms. Harrison again deducted a portion of her rent due to the elevator not working for eight days, rendering her unable to leave her apartment due to her disability.

31.     In her letter notifying Defendants, Ms. Harrison reiterated that the elevator's disrepair had severely impacted her life: "[b]ecause of my disabilities, the lack of elevator service rendered me unable to leave my apartment to perform . . . day-to-day tasks . . . including the inability to make and/or keep medical appointments and attend my place of worship.  Every aspect of what remains of my life was interrupted without elevator service."

**Pelham Court imposes discriminatory lease terms and retaliates against Ms. Harrison by terminating her lease**

32.     Upon information and belief, Pelham Court set out to force Ms. Harrison to leave the property, or, in the alternative, to force her to accept living in an apartment which she could not leave for weeks at a time because of her disability.

33.     In November 2017, Pelham Court sent Ms. Harrison a "Notice (sic) Termination Lease and Notice to Increase Rent."  *See* Ex. B.

34.     The notice stated that Ms. Harrison could renew her lease if she agreed to a 7% rent increase and three new lease terms.

35.     One of the terms stated:

Please note the following:  Elevator use and maintenance is not an obligation of the Landlord to the Tenant.  Therefore, Landlord does not accept responsibility for elevator down time due to mechanical error or maintenance.  By signing this agreement, Tenant agrees as such and that there is to be no rent deduction due to elevator down time.

*Id.*

36.     Pelham Court sent the retaliatory termination notice knowing that it was about to shut down the elevator service in Ms. Harrison's wing of the building for months and knew that

Ms. Harrison would assert her legal right to withhold rent, because the lack of an elevator made it impossible for someone with a disability like hers to fully enjoy the use of her apartment.

37.    Upon information and belief, this lease term was specifically enacted to prevent a disabled resident like Ms. Harrison from taking any action when the elevators went down, while forcing her to leave the property if she disagreed.

38.    Ms. Harrison did not agree to this lease term.

39.    Instead, Ms. Harrison returned the signed agreement renewing her lease for the higher rent rate, but crossed out the new lease term and signed her initials next to the strikethrough. *Id.*

40.    Ms. Harrison explained her actions in a letter:

> Enclosed is my signed Lease Renewal for 2018. Please note that I am <u>not</u> in agreement with your addendum…I do not agree to forfeit my legal rights to make a deduction to my rent when the elevator is inoperable. As you are already aware, I have serious mobility issues and am disabled.

Ex. C.

41.    Six days later, Ms. Harrison received a letter from Emanuel Kosacci, a lawyer representing Pelham Court. *See* Ex. D.

42.    The letter stated that Pelham Court was terminating its lease because of Ms. Harrison's failure to accept the lease term regarding non-working elevators.

43.    Specifically, Mr. Kosacci wrote the following:

> **[E]ach and every term of the proposed lease renewal are integral and non-negotiable in the Landlords' (sic) eyes.** As such your counter offer is hereby REJECTED and your actions are interpreted as a rejection of my clients (sic) offer to renew your lease according to the terms outlined in their proposal. Accordingly, my client will NOT BE RENEWING your lease at the conclusion of your current lease term.

*Id.* (emphasis added).

44.    The letter next threatened Ms. Harrison with eviction:

Should you fail to return possession on or before [December 31, 2017], my client will be forced to file suit for Eviction, which may include Attorney's Fees and Court Costs. As previously stated, the Holdover provisions of your current lease control, should you stay in the property past this date, which provisions may significantly increase your rental payment during your eviction process.

*Id.*

## Pelham Court goes forward with planned elevator upgrades without accommodating Ms. Harrison, trapping her in her apartment

45.    At the same time, it was imposing discriminatory and unlawful lease terms on Ms. Harrison, Pelham Court was preparing to undertake planned elevator upgrades that would shut down the elevator in Ms. Harrison's wing of the building.

46.    Pelham Court sent notices to tenants stating that "elevator modernizations will commence on Monday, November 27, 2017, in the North-East Zone elevator. We are estimating the elevator to take approximately 3-5 weeks, which will require the elevator to be shut down and out of service due to the construction of the new elevator." *See* Ex. E.

47.    Upon information and belief, Pelham Court and Rushmore moved other tenants with disabilities from upper floors to first floor units.

48.    Upon information and belief, Pelham Court and Rushmore had accessible vacant units throughout the building, including vacant units on the first floor in the Northeast wing where Ms. Harrison resided.

49.    Despite this, and despite their knowledge of Ms. Harrison's disabilities, Pelham Court and Rushmore failed to move Ms. Harrison to an accessible unit while the elevator in her wing of the building was under construction.

50.    The elevators were out from November 27, 2017 until February 1, 2018. *See* Ex. F.

51.    During this time, as was the case in the past when the elevators were down, Ms. Harrison was trapped in her fourth-floor apartment.

52.    Ms. Harrison missed numerous doctors' appointments, was unable to attend church, or otherwise leave to attend social events.

53.    Ms. Harrison again wrote to Pelham Court LP and Rushmore and stated that she was withholding one-third of her monthly rent for the elevators being out from November 27, 2017 to February 1, 2018.

**Ms. Harrison challenges Pelham Court's discriminatory lease term in the Philadelphia Fair Housing Commission and wins**

54.    While trapped in her apartment during the elevator outage, Ms. Harrison again filed a complaint against Pelham Court with the Philadelphia Fair Housing Commission charging that Pelham Court retaliated against her for exercising her legal rights.

55.    After a contested hearing, the Fair Housing Commission found that the lease term demanded by Defendants was illegal and again held that Ms. Harrison had a legal right to withhold her rent.  *See* Ex. G.

**COUNT I:**
**FAIR HOUSING ACT – DISCRIMINATION**
**(Plaintiff Brenda Harrison v. Pelham Court LP and Rushmore Management)**

56.    Plaintiff Brenda Harrison incorporates paragraphs 1 through 55 by reference as fully set forth herein.

57.    The Fair Housing Act prohibits "discriminat[ing] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap."  42 U.S.C. § 3604(f)(2).

58.    Pelham Court LP and Rushmore Management violated § 3604 by, among other things:

8

a.  discriminating against Ms. Harrison in the terms of her lease by stating that she
    could not withhold rent for times when the elevator was inoperable;

b.  discriminating against Ms. Harrison by shutting down the elevator to her
    apartment knowing that she would be unable to leave her unit; and

c.  discriminating against Ms. Harrison by terminating her lease when she would not
    agree to the proposed discriminatory terms.

59.    Pelham Court LP and Rushmore Management's conduct was motivated by evil
motive or intent or involved the reckless or callous indifference to the federally protected rights
of Ms. Harrison, and she is therefore entitled to punitive damages.

60.    As a result of Pelham Court LP and Rushmore Management's violation of § 3604
of the Fair Housing Act, Ms. Harrison suffered damages, including economic loss, humiliation,
mental anguish and emotional distress.

<div align="center">

**COUNT II:**
**FAIR HOUSING ACT – RETALIATION**
**(Plaintiff Brenda Harrison v. Pelham Court LP and Rushmore Management)**

</div>

61.    Plaintiff Brenda Harrison incorporates paragraphs 1 through 60 by reference as
fully set forth herein.

62.    The Fair Housing Act makes it "unlawful to coerce, intimidate, threaten, or
interfere with any person in the exercise or enjoyment of, or on account of [her] having exercised
or enjoyed . . . any right granted protection by [the Act]."  42 U.S.C. § 3617.

63.    Ms. Harrison exercised her rights under the Fair Housing Act when she, among
other things:

a.   complained about the lack of elevator service, citing her disability and the
     hardship that the lack of elevator service caused her because of her mobility
     issues;

b.   withheld rent based on the elevator being inoperable;

c.   made a reasonable accommodation request when she asked Pelham Court LP and
     Rushmore to remove the discriminatory lease term forbidding her from
     withholding rent in the event the elevator became inoperable; and

d.   moved other tenants to accessible units during elevator outages but refused to do
     the same for Ms. Harrison.

64.   Pelham Court LP and Rushmore Management retaliated against Ms. Harrison by
terminating her lease, demanding that she leave her home of fourteen years, and threatening her
with an eviction filing and the associated court costs and attorney's fees.

65.   Pelham Court LP and Rushmore Management's conduct was motivated by evil
motive or intent or involved the reckless or callous indifference to the federally protected rights
of Ms. Harrison, and she is therefore entitled to punitive damages.

66.   As a result of Pelham Court LP and Rushmore Management's violation of § 3617
of the Fair Housing Act, Ms. Harrison suffered damages, including economic loss, humiliation,
mental anguish and emotional distress.

**COUNT III:**
**FAIR HOUSING ACT – REASONABLE ACCOMMODATION**
**(Plaintiff Brenda Harrison v. Pelham Court LP and Rushmore Management)**

67.   Plaintiff Brenda Harrison incorporates paragraphs 1 through 66 by reference as
fully set forth therein.

68.     The Fair Housing Act prohibits landlords from refusing "to make reasonable accommodations in rules, polices, practices, or services, when such accommodations may be necessary to afford [persons with disabilities] equal opportunity to use and enjoy a dwelling…" is a violation of the Act. 42 U.S.C. § 3604(f)(3).

69.     Pelham Court and Rushmore Management refused reasonable accommodations for Ms. Harrison when they:

    a.  rejected Ms. Harrison's proposed modified terms for her lease renewal in November 2017;

    b.  failed to provide Ms. Harrison with reasonable accommodations during multiple elevator outages despite the availability of accessible units and despite their knowledge that she was disabled; and

    c.  moved other tenants with disabilities to accessible units but failed to do the same for Ms. Harrison.

70.     Pelham Court LP and Rushmore Management's conduct was motivated by evil motive or intent or involved the reckless or callous indifference to the federally protected rights of Ms. Harrison, and she is therefore entitled to punitive damages.

71.     As a result of Pelham Court LP and Rushmore Management's violation of § 3604 of the Fair Housing Act, Ms. Harrison suffered damages, including economic loss, humiliation, mental anguish and emotional distress.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brenda Harrison demands judgment in her favor and against Defendants Pelham Court LP and Rushmore Management for:

(a) a declaratory judgment finding that Defendant's actions violate the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 *et seq.*;

(b) actual damages for economic loss, humiliation, mental anguish, and emotional distress;

(c) punitive damages;

(d) reasonable attorney's fees and costs under 42 U.S.C. § 3613(c);

(e) injunctive relief in the form of a court order enjoining Defendants from imposing discriminatory lease terms on Ms. Harrison or terminating her lease for twelve months; and

(f) any other relief as this Court deems just and equitable.

## JURY DEMAND

72.    Plaintiff Brenda Harrison demands a trial by jury on all relevant issues.


Dated: August 14, 2018

<div style="margin-left:40%">

PUBLIC INTEREST LAW CENTER

/s/ George A. Donnelly
Daniel Urevick-Ackelsberg (PA 307758)
George A. Donnelly (PA 321317)
Public Interest Law Center
1709 Benjamin Franklin Pkwy., 2nd Floor
Philadelphia, PA 19103
215-627-7100
dackelsberg@pubinlaw.org
gdonnelly@pubintlaw.org


WILLIG, WILLIAMS & DAVIDSON


/s/ Ryan Allen Hancock
Ryan Allen Hancock (PA 92590)
Willig, Williams & Davidson
1845 Walnut Street, 24th Floor
Philadelphia, PA  19103
Telephone: (215) 656-3600
Facsimile: (215) 567-2310
rhancock@wwdlaw.com

</div>

# EXHIBIT A

# THE CITY OF PHILADELPHIA



FAIR HOUSING COMMISSION
Curtis Center Building
601 Walnut St, 3rd Floor, Suite 300 South
Philadelphia, PA 19106
Telephone (215) 686-4670
Fax # (215) 686-4684

**David T. Rammler, Esquire**
Chairperson
**Rue Landau, Esquire**
Executive Director

Brenda Harrison
6803 Emlen St., Apt. 407
Philadelphia, PA 19119

vs.                                                    Docket #: F17-04-2814

Pelham Court LP
1412 Avenue M Suite 2513
Brooklyn, NY 11230
        Landlord

Pelham Court LP
P.O. Box 945
Lakewood, NJ 08701
        Landlord

Rushmore Management
6803 Emlen Street, Front Office
Philadelphia, PA 19119
        Agent

## FINAL ORDER

On May 23, 2017, the Fair Housing Commission heard the above cited matter; and, the following ORDER was issued, in accordance with the Philadelphia Fair Housing Ordinance, and §§ 9-801, 9-804, 9-805, and/or 9-806 of The Philadelphia Code:

1. On May 23, 2016, the Fair Housing Commission heard this matter for the 1st time.

2. Present at the May 23, 2017 hearing were Tenant Brenda Harrison and, for the Landlord, Rimma Ambartsoumian, Property Manager, and Binyomin Weinberg, Property Manager.

3. Evidence presented at the May 23, 2017 hearing is included in Paragraphs A through V below.

A. The Tenant testified, on December 20, 2004, she moved into the property located at 6803 Emlen St., Apt. 407, Philadelphia, PA.

B. The Tenant testified, as of May 23, 2017, she still resides in the unit.

C. The Tenant testified rent is $1125 per month plus an additional $37 for electric service.

D. The Tenant testified she filed her April 21, 2017 Fair Housing Commission complaint after she received a notice from the Landlord, dated April 20, 2017, that threatened eviction because she withheld a portion of rent.

E. The Tenant testified she withheld rent because the elevator in her building was out from March 10, 2017 through March 29, 2017.

F. The Tenant testified she is on the 4th floor and has mobility issues and, without the elevator, she was confined to her apartment for 19 days.

G. The Tenant testified she withheld $12.09 per day for 19 days in March 2017; the Tenant presented a document from Citizens Bank that showed $229.84 in the account.

H. The Tenant testified she notified the Landlord that she intended to deduct a portion of her rent was on the day she paid rent, April 12, 2017.

I. The Tenant submitted a copy of a letter she gave to the Landlord, dated April 12, 2017, that stated she withheld $229.84 for 19 days when the elevator was inoperable. This letter further stated that, due to the Tenant's disabilities, the lack of elevator service rendered her unable to leave her apartment to perform any day-to-day tasks outside of her unit.

J. The Landlord testified, on March 1, 2017, his company took over the building.

K. The Landlord testified, as a result of a fire or explosion in a nearby PECO Substation, there was a power outage in the entire building and block for about 36 hours.

L. The Landlord testified when the power came back on, there was an electrical surge in the building which caused the wiring in the elevators to be dislodged from the line.

M. The Landlord testified technicians were in the building every day and worked for hours until the elevators were repaired.

N. The Landlord testified he is aware there are on-going issues with the elevators and new elevators are being installed.

O. The Landlord testified a deposit of $210,000 was made on new elevators and work should start in about 2 weeks.

P. The Landlord presented an invoice from Elevator Construction & Repair Co., Inc. for the replacement of 3 elevators in the property.

Q. The Landlord verified he did send the Tenant a letter, dated April 20, 2017, that stated 'Past Due Rent – Second Notice' in reference to $277.10 in outstanding rent. This letter further stated if payment was not received within 7 days, legal action would be taken, including but not limited to termination of the lease and eviction.

R.  On March 6, 2017, L&I issued a written report for case # 574713 that cited numerous common area code violations.

S.  The Landlord testified L&I violations were corrected.

T.  The Landlord presented an email, dated May 22, 2017, to L&I Inspector Lloyd Miner that stated all repairs were made.

U.  On March 15, 2017, the Landlord renewed his rental license for the property.

V.  Paragraph 8(a) of the written lease, entitled Destruction or Damage, states, in part, 'if the destruction or damage makes the property partly or completely unlivable, the tenant can choose to' move out as soon as possible or 'until the landlord repairs the damage, the rent is reduced by the percentage of the property that is unlivable'.

4.  Pursuant to § 9-804(1) of The Philadelphia Property Maintenance Code, whenever any premises are found in violation of any provision of The Philadelphia Code and a notice of violation has been issued by any department or agency of the City, it shall be unlawful for any owner, landlord, agent or other person operating or managing such premises to terminate the lease; and, alter amend or modify any term or condition of any existing lease or arrangement of tenancy at the time notice of violation is issued until the violation has been corrected.

5.  Pursuant to § 9-804(2) of The Philadelphia Property Maintenance Code, it shall be unlawful for any owner, landlord, agent or other person operating or managing premises to terminate a lease with a tenant or make, alter, amend or modify any term or condition of any existing lease or arrangement of tenancy with a tenant in retaliation for the exercise of any legal right by the tenant.

6.  Pursuant to § 9-804(2)(d) of The Philadelphia Property Maintenance Code, in any civil proceeding involving this provision in which the notice of termination was found, a right of the tenant against the landlord, agent or other person operating or managing premises was exercised, or a correction made, whichever is the latest, it shall be the burden of the owner, landlord, agent or other person operating or managing such premises to prove that the notice  was not given in retaliation for the exercise by the tenant of his legal rights.

7.  Under Pennsylvania law, the non-working elevator constituted a violation of the covenant of quiet enjoyment and Warranty of Habitability that justified a reduction in rent by the Tenant.

8.  On May 23, 2017, the Fair Housing Commission issued a Final Order that instructed the following:

A.  The written lease states the Tenant has a right to withhold rent for any deprivation of services or benefits gained through the lease.

B. The Landlord's April 20, 2017 letter to the Tenant which threatened termination of the lease and eviction is void pursuant to §§ 9-804(1) and 9-804(2) of The Philadelphia Property Maintenance Code.

C. As the Tenant could not use the elevator for 19 days, the amount withheld by the Tenant was a fair reduction in rent based upon the reduction of services to the Tenant.

D. The Tenant shall continue to occupy the premises pursuant to the terms and conditions of the written lease.

E. The Landlord shall give the Tenant a 24-hour notice before entering the property or sending service contractors to the home to make repairs.

F. Upon sufficient notice from the Landlord, the Tenant must make the property accessible to the Landlord and service contractors.

G. There shall be no harassment or retaliation by either party.

H. This matter is closed.


_____          6/7/17
                    COMMISSIONER
            FAIR HOUSING COMMISSION
               Docket #: F17-04-2814

If you wish to appeal the Final Order of the Philadelphia Fair Housing Commission you must do so in the Court of Common Pleas. You do this by filing a Notice of Appeal with the Prothonotary of the Court of Common Pleas, Room 280 City Hall. You have thirty (30) days in which to file an Appeal of the Commission's Order. If you are the Tenant you will be required to put any Escrow monies into an account with the Prothonotary. The amount must be enough to bring you current and up to date with what you would have normally paid in rent.

If you wish to appeal this order or are named as a party in an appeal, it is strongly recommended that you get a lawyer. All appeals are governed by the Rules of Civil Procedure of the Court of Common Pleas and strict compliance is required. IF YOU FAIL TO COMPLY WITH THESE RULES, YOU CAN LOSE YOUR CASE. If you do not have a lawyer or cannot afford one, you may call the Philadelphia Bar Association, Lawyer Referral & Information Service, at (215) 238-6333, Monday to Friday, 9A.M. to 5 P.M.

# EXHIBIT B



**PELHAM COURT**
APARTMENTS

Pelham Court LP
PO Box 945
Lakewood NJ08701

Brenda Harrison
6803 Emlen Street
Unit 407
Philadelphia PA 19119

Re: Notice Termination Lease and Notice to Increase Rent

Dear Brenda Harrison:

You now rent Apartment 407 located at 6803 Emlen Street Philadephia, PA 19119 as a tenant.

TERMINATION OF OCCUPANCY. Your occupancy is TERMINATED (ended) as of 12/31/2017

DEMAND FOR POSSESSION. You must leave and vacate this property on or before that date (date of termination). This means you must move out and deliver possession to me, your landlord.

NOTICE OF RENT INCREASE. You may remain in the apartment if you choose to pay the following rent increase.

You are hereby offered a new tenancy at an increased rent. Your present rent is $1,125.00. Your rent is being increased by 7.00% . Therefore, your new rent will be $1,203.75 effective 1/1/2018. If you wish to remain as a tenant in this apartment, your new rent will be $1,203.75 beginning 1/1/2018. Imposing this rent increase now shall not serve as a waiver of the Landlord's right to increase your rent on your next anniversary date. Your Anniversary date shall remain as 12/31/2018.

WINDOW GUARD OPTION. The tenant may have window guards installed by the landlord in the tenants apartment and the public halls, provided that 1- the tenant makes a written request to the landlord for such installation; and 2- A child 10 years of age or younger resides in the apartment or are regularly present in the apartment for a substantial period of time; and 3- the tenants apartment is located higher that the first floor. Tenants living on the first floor may only request window guards on windows in public halls above the first floor to which persons in the tenants unit have access without having to exit the building. Window guards shall not be installed on any windows giving access to a fire escape. No tenant shall obstruct or interfere with the installation of the window guards and no tenant shall remove or otherwise render ineffective such window guards. The tenant shall grant the landlord access to the apartment to inspect each window guard in the apartment.



LEASE RENEWAL/ADDENDUM FOR HEATING COST ALLOCATION. Tenant shall pay to Landlord or designee of Landlord, the cost for energy utilitzed by Landlord to provide heat to tenant's apartment. During the heating season the Tenant's heating bill shall be composed of three parts:
1.    Direct Heat-The energy consumed to provide space heating within the Tenant's apartment as monitored by the Landlord or designee of Landlord.
2.    Billing Cost-Tenant will be assessed an administrative fee of $2.95 per billing period.
3.    Heat used to control the hot water temperature.
Energy charges per energy unit shall be equal to Landlord's cost for same energy or utility company's residential cost per unit. Landlord or designee of Landlord shall bill tenant monthly for such energy use. Payment for energy use shall be due on the due date stated on the monthly bill. Landlord reserves the right to charge 1.5% per month late charges on the past due balances. ALL ENERGY CHARGES ARE CONSIDERED RENT. THEREFORE IN THE EVENT OF NON-PAYMENT, THE LANDLORD MAY RESORT TO THE EXTRAORDINARY REMEDIES PROVIDED IN THE CASE OF LEASE DEFAULT, INCLUDING EVICTION.



Please note the following: Elevator use and maintenance is not an obligation of the Landlord to the Tenant. Therefore, Landlord does not accept responsibility for elevator down time due to mechanical error or maintenance. By signing this agreement, Tenant agrees as such and that there is to be no rent deduction due to elevator down time.

This offer shall in no way serve as a waiver of the Landlords rights to pursue any claims for unpaid rent, unpaid additional rent, breach of lease, tenancy terms, breach of the rules and regulations and/or to collect any outstanding balance.

We hereby request that you initial your option, sign and return a copy of this letter 60 days prior to your lease end date.  If you are not renewing your lease agreement, please indicate your intentions of vacating by replying in writing in accordance to the lease terms by providing 60 day required notice to vacate the property.

Please let us know if you have any questions or concerns regarding your renewal invitation.  We are looking forward to serving you as our tenant for the upcoming year.

I choose to stay in the apartment for this yearly term and accept the rent increase

X _Brenda Harrison_

Harrison, Brenda , 6803 Emlen StreetUnit 407


I choose to vacate my apartment on my lease end date.



X _____

Harrison, Brenda , 6803 Emlen StreetUnit 407


If you do not sign this lease or give us your notice of intent to vacate and you continue to stay in the apartment after the terminated date, then the default is to look to the holdover provision of your current lease. you will begin a Month to Month tenancy under the same rules of your original lease.

Sincerely,

_____

# EXHIBIT C

November 10, 2017
Pelham Court LP
6803 Emlen St. - Office
Phila., PA 19119

RE:  Pelham Court, Apt. 407
     Lease Renewal for 2018

Enclosed is my signed Lease Renewal for 2018. Please note that I am not in agreement with your Addendum regarding Paying the cost of heat and hot water as I have concerns as to how my individual usage would be determined. In addition, I do not agree to forfeit my legal rights to make a deduction to my rent when the elevator is inoperable. As you are already aware, I have serious mobility issues and am disabled.

Very truly yours,

Brenda Halloran

# EXHIBIT D



# KOSACCI LAW FIRM, P.C.

4821 E. STREET ROAD • FEASTERVILLE-TREVOSE, PA 19053

PHONE (215) 436-9848 • FAX (215) 703-3743

WWW.MYPALAW.COM

Emanuel Kosacci, Esquire
Licensed in PA and NJ
ekosacci@mypalaw.com

Maria Kaplun, Paralegal
Notary Public
mkaplun@mypalaw.com

November 16, 2017

Brenda Harrison
6803 Emlen Street
Unit 407
Philadelphia, PA 19119

Re:    Lease Termination/ Non-Renewal for Pelham Court, Apt 407

Dear Ms. Harrison,

Please be advised that I represent your Landlord, Pelham Court, LP, in connection to your lease termination/ non-renewal. As you know, your lease term ends on December 31, 2017. My client previously sent you a notice advising you that they intended to terminate the lease on the above mentioned date unless you accepted the terms of an offer of lease renewal that was mailed to you. The terms that were mailed to you were not an invitation to negotiate or a proposal to open negotiations. Instead, the terms represent the Landlords' required terms for lease renewal, with each term being an essential consideration to the Landlord in order to enter into a new contractual term with you.

My client recently received a letter from you dated November 10, 2017 wherein you agreed to certain terms of the proposed lease renewal, but rejected others. As previously mentioned, each and every term of the proposed lease renewal are integral and non-negotiable in the Landlords' eyes. As such, your counter offer is hereby REJECTED and your actions are interpreted as a rejection of my clients offer to renew your lease according to the terms outlined in their proposal. Accordingly, my client will NOT BE RENEWING your lease at the conclusion of your current lease term.

Please make arrangement to vacate the property on or before December 31, 2017 in broom swept condition and returning your keys to your Landlord. Should you fail to return possession on or before this date, my client will be forced to file suit for Eviction, which may include Attorney's Fees and Court Costs. As previously stated, the Holdover provisions of your current lease will control, should you stay in the property past this date, which provisions may significantly increase your rental payment during your eviction process.

Very Truly Yours,

Emanuel Kosacci, Esq.

# EXHIBIT E



# PELHAM COURT

APARTMENTS

# New Elevators Underway!

Dear Valued Residents,

Please be advised the elevator modernizations will commence on **Monday, November 27, 2017,** in the North-East Zone Elevator. We are estimating the elevator to take approximately 3-5 weeks, which will require the elevator to be shut down and out of service due to the construction of the new elevator.

We will continue to work with our new elevator company to keep tenants better informed as to the progress of the modernization.

We thank you for your anticipated patience and cooperation as we bring you a brand-new elevator just in time for the New Year! If you have any questions, please call us at 215.438.8060 or email us at service@pelhamcourtapts.com.

Sincerely.

-Management

# EXHIBIT F

3/5/2018

Elevator Now Open!

**From:** Pelham Court Management <service@pelhamcourtapts.com>
**To:** bhllc6 <bhllc6@aol.com>
**Subject:** Elevator Now Open!
**Date:** Thu, Feb 1, 2018 4:44 pm



# North East Zone Elevator
## February 1, 2018

Dear Valued Tenants,

Great news! The installation work for the new elevator in the North East Zone has been completed and the elevator is ready to be used. This project is part of the ongoing efforts by Rushmore Management to modernize and improve Pelham Court throughout the past year. Enjoy your new Elevator and any feedbacks are always welcome.

If you have any questions or concerns, please email us at service@pelhamcourtapts.com or call (215) 485-8580.

P.S. Here are some pictures of the new elevators!

Sincerely,

-- Management

# EXHIBIT G

# THE CITY OF PHILADELPHIA



FAIR HOUSING COMMISSION
Curtis Center Building
601 Walnut St, 3rd Floor, Suite 300 South
Philadelphia, PA 19106
Telephone (215) 686-4670
Fax # (215) 686-4684

**David T. Rammler, Esquire**
Chairperson
**Rue Landau, Esquire**
Executive Director

Brenda Harrison
6803 Emlen St., Apt. 407
Philadelphia, PA 19119

     vs.

Docket #: F17-11-2937

Pelham Court LP
1412 Avenue M Suite 2513
Brooklyn, NY 11230
     Landlord

Pelham Court LP
P.O. Box 945
Lakewood, NJ 08701
     Landlord

## FINAL ORDER

On May 23, 2018, the Fair Housing Commission reviewed the above cited matter; and, the following ORDER was issued, in accordance with the Philadelphia Fair Housing Ordinance, and §§ 9-801, 9-804, and/or 9-806 of The Philadelphia Code:

1. On May 15, 2018, the Fair Housing Commission heard this matter for the 1st time.

2. Present for the May 15, 2018 hearing were Tenant Brenda Harrison and, Darlene Hemerka Esquire, for Tenant; Landlord Ben Weinberger; Property Manager Rimma Ambartsoumian; and, Emanuel Kosacci, Esquire, for the Landlord.

3. Evidence presented at the May 15, 2018 hearing is included in Paragraphs A through N below:

A. The Tenant testified that, on December 20, 2004, she moved into the property located at 6803 Emlen St., Apt. 407, Philadelphia, PA 19119.

B. The Tenant testified, as of May 15, 2018, she still resides in the unit.

C. The Tenant filed her 1st complaint with the Fair Housing Commission and a Final Order was issued in that matter in May 2017.

D. On November 27, 2017, the Tenant filed this 2nd complaint with the Fair Housing Commission against the Landlord.

E. On or about October 30, 2017, the Tenant testified that she received a lease renewal from the Landlord that contained 2 new modifications: 1) tenant was responsible for heat in the apartment; and, 2) tenant would agree that she would not reduce her rent for elevator downtime.

F. The Tenant testified that the lease renewal also included a rent increase from $1125 per month to $1203.75 per month.

G. On November 10, 2017, the Tenant notified the Landlord in writing that she wanted to renew her lease but that she objected to the 2 new lease modifications.

H. The Tenant testified that she objected to the 2 modifications because: 1) there is neither a meter nor a thermostat in her unit; and, 2) the Tenant needs the elevator to access her 4th floor unit.

I. The Tenant presented a letter from the Landlord, dated November 16, 2017, that stated Tenant's lease was terminated as of December 31, 2017 because Tenant did not agree to the lease modifications.

J. The Tenant presented a notice from the Landlord that stated, beginning November 27, 2017, the 'elevator modernizations' would commence and that it would take approximately 3-5 weeks to be installed.

K. The Tenant presented a copy of her letter, dated December 14, 2017, to the Landlord that stated rent for December 2017 was reduced from $1125 to $925 due to the lack of an elevator that created a 'tremendous hardship' for Tenant.

L. The Tenant presented a copy of her email to the Landlord, dated January 11, 2017, that stated rent for January 2018 was reduced from $1125 to $787.50 due to lack of elevator service and Tenant's 'inability to leave my apartment due to limited mobility'. In this same email, the Tenant stated the elevator was out of service for 27 days from November 28, 2017 through January 11, 2018.

M. The Tenant testified that she paid May 2018 rent to the Landlord on May 9, 2018.

N. The Tenant testified that she withheld 1/3 of $1125 rent from the Landlord from November 29, 2017 through February 1, 2018 because of lack of elevator service.

O. The Tenant presented a May 14, 2018 rent withholding account from Citizens Bank that showed $775 for November 2017 through February 2018 rent.

P. The Landlord testified that the elevator was inoperable from December 5, 2017 through March 5, 2017.

Q. The Landlord testified that there was an offer to the Tenant to renew the lease and that the Tenant rejected 2 of the provisions: Tenant shall pay for heat in Tenant's apartment and Tenant would not deduct rent for elevator down time.

R. The Landlord testified that he did issue the November 16, 2017 notice to the Tenant that her lease was terminated effective December 31, 2017.

4. Pursuant to § 9-804(2) of The Philadelphia Property Maintenance Code, it shall be unlawful for any owner, landlord, agent or other person operating or managing premises to terminate a lease with a tenant or make, alter, amend or modify any term or condition of any existing lease or arrangement of tenancy with a tenant in retaliation for the exercise of any legal right by the tenant.

5. Pursuant to § 9-804(13) of The Philadelphia Property Maintenance Code, no provision of § 9-804 of The Philadelphia Fair Housing Ordinance can be waived or made subject to a contract between the parties depriving a tenant of the benefits of this Section.

6. Based on the Warranty of Habitability (Pugh v Holmes, 486 PA 272, 405 A.2d 897 (1979)), a non-working elevator is a violation of the covenant of quiet enjoyment and Warranty of Habitability that justified a reduction in rent by the Tenant.

7. On May 22, 2018, the Fair Housing Commission reviewed this matter, and based on findings of fact and conclusions of law, the following Final Order was issued:

8. Pursuant to §9-804(13) of the Philadelphia Code, no provision of §9-804 of The Philadelphia Fair Housing Ordinance shall be waived or made subject to a contract that deprives the tenant from the protection of the Ordinance.

9. The Landlord violated § 9-804(13) when they added a stipulation in the lease renewal that required the Tenant to forgo exercising a legal right under § 9-804(2) of The Philadelphia Property Maintenance Code.

10. When the Tenant objected to waiving her legal right under § 9-804, the Landlord retaliated against the Tenant by issuing a notice of lease termination on November 16, 2017.

11. As the Landlord is in violation of §§ 9-804(2) and 9-804(13) of The Philadelphia Property Maintenance Code, the notice of lease termination from the Landlord to the Tenant is void.

12. The lease between the Tenant and the Landlord is extended through December 2018.

A. While the Landlord made great effort to make improvements to the building, 60 days without a working elevator is a long time and would deprive the Tenant of enjoyment of the rental property.

B.  The Tenant is, thus, awarded $775 in withheld rent for the 60 days that the elevator was not working.

C.  As rent is $1203.75 per month and not $1125 per month, the Tenant owes the Landlord $78 rent for the months of January 2018 through March 2018, for a total of $390.

D.  The Commission made no decision on the matter of the gas bill and this issue shall be worked out between the parties.

E.  Both parties are bound by the terms and conditions of the written lease.

F.  The Landlord shall give the Tenant a 24-hour notice before entering the property or sending service contractors to the home to make repairs.

G.  Upon sufficient notice from the Landlord, the Tenant must make the property accessible to the Landlord and service contractors.

H.  There shall be no harassment or retaliation by either party.

I.  This matter is closed.

_____          5/23/18
            COMMISSIONER
      FAIR HOUSING COMMISSION
         Docket #: F17-11-2937

If you wish to appeal the Final Order of the Philadelphia Fair Housing Commission you must do so in the Court of Common Pleas. You do this by filing a Notice of Appeal with the Prothonotary of the Court of Common Pleas, Room 280 City Hall. You have thirty (30) days in which to file an Appeal of the Commission's Order. If you are the Tenant you will be required to put any Escrow monies into an account with the Prothonotary. The amount must be enough to bring you current and up to date with what you would have normally paid in rent.

If you wish to appeal this order or are named as a party in an appeal, it is strongly recommended that you get a lawyer. All appeals are governed by the Rules of Civil Procedure of the Court of Common Pleas and strict compliance is required. IF YOU FAIL TO COMPLY WITH THESE RULES, YOU CAN LOSE YOUR CASE. If you do not have a lawyer or cannot afford one, you may call the Philadelphia Bar Association, Lawyer Referral & Information Service, at (215) 238-6333, Monday to Friday, 9A.M. to 5 P.M.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvani⌄

| | |
|---|---|
| Brenda Harrison<br><br>*Plaintiff(s)*<br>v.<br>Pelham Court LP<br>Rushmore Management<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Pelham Court LP
2021 Arch Street
Philadelphia, PA 19103

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

George Donnelly
Public Interest Law Center
1709 Benjamin Franklin Parkway
Philadelphia, PA 19103

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____    _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____                  _____
                                              *Server's signature*

                                        _____
                                              *Printed name and title*


                                        _____
                                              *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania ▾

| | | |
|---|---|---|
| Brenda Harrison | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | Civil Action No. |
| v. | ) | |
| Pelham Court LP | ) | |
| Rushmore Management | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Rushmore Management
111 S. Harrison Street
East Orange, NJ 07018

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

George Donnelly
Public Interest Law Center
1709 Benjamin Franklin Parkway
Philadelphia, PA 19103

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                          *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. _____

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Brenda Harrison

## DEFENDANTS
Pelham Court LP
Rushmore Management

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
George Donnelly, Public Interest Law Center
1709 Benjamin Franklin Pkwy, Philadelphia, PA 267-546-1307

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☒ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty
**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent – Abbreviated New Drug Application
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Sec. 3601
Brief description of cause:
Fair Housing Act

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
200,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE                                        DOCKET NUMBER

DATE   8/14/18

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #  AUG 14 2018      AMOUNT                 APPLYING IFP                 JUDGE  AUG 14 2018        MAG. JUDGE

TJS

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 6803 Emlen Street, Philadelphia, PA 19119

Address of Defendant: 2021 Arch Street, Philadelphia, PA 19103

Place of Accident, Incident or Transaction: 6803 Emlen Street, Philadelphia, PA 19119

---

**RELATED CASE, IF ANY:**                                                          **18    3431**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: AUGUST 04, 2018      GEORGE DONNELLY      321317
_____   _____   _____
                            *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.    Federal Question Cases:**

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☒ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
        *(Please specify):* _____

**B.    Diversity Jurisdiction Cases:**

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
        *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, George Donnelly , counsel of record *or pro se plaintiff*, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☒ Relief other than monetary damages is sought.

DATE: 8/14/18      _____      321317
_____   _____   _____
                    *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

AUG 14 2018

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

TJS

Branda Harrison

         v.

Pelham Court LP
Rushmore Management

:
:
:
:

CIVIL ACTION

18    3493

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration -- Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (✓)

| | | |
|---|---|---|
| 8/14/18 | George Donnelly | Brenda Harrison |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 267-546-1307 | 215-627-3183 | gdonnelly@pubintlaw.org |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02